Today's Senate Call is 2-490-1209. Stefka and Yankulova v. Village of Bensenville. Our Green Abbey Daphne is one more in Ms. Sophia St. Clair. And our Green Abbey Daphne is Anthony Rotroflata. Thank you. Mr. Orr? May it please the Court. My name is Glen Orr. And along with Ms. Nimer, I represent the plaintiff appellants in this matter, Stefka Yankulova and Rumi Nanov, Special Administrator of the Estate of Anton Yankulov. They both sued for personal injuries suffered by Stefka Yankulova and the death of her son, Anton Yankulov, from this accident that occurred on January 23, 2008, at the intersection of York and Wood Roads in the Village of Bensenville. The defendants in this matter brought a motion to dismiss, pursuant to Section 2619 under the Governmental Tort Immunity Act, and the trial court granted that motion to dismiss. We appeal, alleging an error in law on the trial court's part because the judgment stated the allegations in our complaint and misapplied the law. The trial court stated that our complaint amounts to nothing more than stating that the village failed to enforce its ordinance and that they are therefore immune, pursuant to Section 2103, holding that a village cannot be held liable for its failure to enforce any law or ordinance, when in fact the plaintiff's complaint alleges that the Village of Bensenville was negligent because it failed to maintain its roadway and its intersection in a reasonably safe condition, in violation of the common law, as well as their own ordinance and statutory directive. Wasn't the obstruction not on the roadway? That is correct, Your Honor. The tree itself emanated from private property. However, the dense outgrowth of that tree obstructed the view of people on the highway, and that is the crux. Well, did it suspend itself over the roadway, or was it still on private property when it was extending itself? We make no allegation with respect to that, and our holding is that it's irrelevant, so long as it obstructed the view of drivers on the roadway. If somebody approaching the intersection on Wood Street cannot see oncoming traffic on York Road, and vice versa... So it's not so much that it's on the roadway, it's more that it is in the area that is defined by the village ordinance that talks about fields of vision and triangular areas and so on. It's a visual obstruction rather than a physical obstruction on the roadway. So while it emanates from private property, it affects the public property. And in addition to the common law duty of the village to maintain its roadways in a safe condition, the village has also taken it upon itself to define as a public nuisance, and to define as an obstruction this particular type of visual obstruction. So it's not really based... the duty is not really based upon common law. With respect to the duties, the court correctly acknowledged that the village of Bensonville had a duty to maintain its roads in a reasonably safe condition. It's just that the court committed a legal error, in our opinion, when it determined that the village of Bensonville was immune. The act, the Tort Immunity Act, recognizes duties that exist and confers immunities, and if a duty is found, we're required to rely upon that act to determine whether the entity, the governmental entity, is liable for a breach of this duty. There is no immunity in this case. But most of the language in the act, the Tort Immunity Act, talks about the property of... say the local public entity has the duty to exercise ordinary care to maintain its property. Yes. And it all... if you read through it, and I was marking up with a little pink to identify it, most of the sections say it's property, it's property, it's property. Not someone else's, but it's. Yes. So how do we deal with that? It's sort of a confusing thing, unless you're one of us attorneys here and you've thought about it long enough. But if you are on the roadway, which is the village property, and you cannot see oncoming traffic, and by virtue of your inability to see that oncoming traffic, it represents an unreasonably dangerous condition for you, it cannot be said that the roads are safe simply because that tree happens to grow from private property. If your vision is obstructed by that tree, the roadways of the village are not safe. And I think this is one reason that the village imposed upon itself a statutory duty by virtue of its enactment of the ordinance to free the streets. Is this a statutory obligation or a common law obligation that you're hanging your hat on? Both, Your Honor. There's a common law duty to maintain its streets in a reasonably safe condition. There is also a couple of ordinances. One that imposes no affirmative duty upon the village to go upon the private property and remove the obstruction. There is another ordinance that we cite to in our subsequent pleadings, which is Section 8-1-4. Let me hear this.  The streets, sidewalks, and alleys of the village shall be kept free and clear of all obstructions, encumbrances, and encroachments for the use of the public. Shall. It is virtually identical to the City of Aurora's ordinance. What's the purpose of the municipal immunity? What's the purpose of that protection? As I understand it, it's to protect the governments from paying large settlements. It's really a cost-saving measure to protect the government against certain actions. Why does it not apply here? What's that? Why does it not apply here, that policy or that theory? Because there is no immunity for the village to maintain its own streets and highways. So your theory is it's the roadway and this visual triangle. How do they call it? Vision clearance triangle. The triangle. That's the village's responsibility. And anything that encroaches in that, regardless of where it comes from, is the village's responsibility. It is the village's responsibility to keep the streets and the roadways of the village absolutely free and clear of all obstructions, be they physical or visual. They've already defined a visual obstruction as a nuisance, a public nuisance, according to their own ordinance. They've defined the visual obstruction as an obstruction, and in their own ordinance, they say the streets shall be kept clear of all obstructions. If what you say is true, then any ordinance that requires people to shovel their walks would result in liability in the city if somebody slipped and fell on private property that allegedly was inappropriately cleaned on the basis that they had violated their own ordinance because they didn't enforce the ordinance against the private landowner such that but for the failure of the city to enforce its ordinance relative to snow removal, the accident wouldn't have happened. That's essentially the argument that's presented by the defense. That is essentially the holding of the lower trial court in this case. However, there is a very meaningful distinction. There is generally no duty for a municipality to reach outside of their own property to remove these obstructions, to enforce the ordinance. Here, we're saying that the village violated its own ordinance, that the village violated its own common law duty, not merely that they failed to enforce some ordinance against a private property owner. If this accident had occurred on the front lawn of the private property, that would be a different story. This accident occurred on the public roadway, which is maintained by the village. The accident occurred on a public roadway, but that doesn't mean that the condition of the public roadway was what caused the accident. The obstruction on private property was what I believe you allege is what caused it. And you're claiming that the city passed an ordinance that said that they were to enforce this ordinance and that it was supposed to remove or force the removal of obstructions that were on private property. This is not an obstruction that's on public property, is it? There we disagree, Your Honor. Okay. Why do you say that we disagree? The obstruction emanates from private property, but the obstruction obstructs the public roadways. Meaning, again, if you're on the public roadway, is it safe for you to be traveling on the public roadway where there's something overhanging and creating an obstruction from your vision to oncoming traffic? Isn't that what the case in DeKalb, the Bank of DeKalb v. Aurora said, though, was the obstruction was actually on city property? Yes. But the court also said even if the obstruction had been on private property, there would have been a duty because of the ordinance. That was dicta, though, wasn't it? It's pretty powerful dicta. Nonetheless. Nonetheless. Powerful is one word, dicta is another word. Yeah, absolutely. Okay. But they do say in that case, although the question, they say that the trial court made much of the topic of governmental immunity, the trial court, it didn't come up on appeal. It was taken care of in the trial court. Most of these cases, if not all these cases, are about duty. I'm sorry? If there had been five accidents in five months caused by this obstruction at this intersection, would you have filed a count or claiming willful and wanton conduct instead of mere negligence? That's a possibility and I appreciate the thought. It's something I would have to think about. Given the opportunity, I might just do that. Well, what you're saying here is that there have been about 24 accidents in five years. Yes. But that's as far as you go. You don't say if there is a result of texting or the overhang or there could have been rear-end accidents at that, which wouldn't have anything to do with this alleged obstruction. So that fact alone is not real helpful in this case, is it? I regret the deficiency in our pleading and given the opportunity, I would clarify that allegation. But nonetheless, we do allege that they were under constructed measures. Well, this is a 619 motion. That's correct. So it assumes that you've stated a cause of action. Yes, as I said. But I wanted to, if I could, just get back to what I feel is a very strong message from the Supreme Court in the DeKalb, back of DeKalb case, where they talk about governmental immunity, an entire paragraph on governmental immunity. Although that question is not relevant, given the holding in French and the plaintiff here, their allegations of violations of Aurora's municipal code, it's irrelevant because they violated their own ordinance according to the Supreme Court. Yes, that's dicta. But nonetheless, they've said it. And we think that that provides powerful guidance in the event a case like this were to come to a court like this. We feel that that offers some very significant guidance. The court goes on to talk about the erosion and eventual disavowal of sovereign immunity. And then it goes on to say that the immunity provided by the act is not absolute. In this case, we are unable to say that Aurora did adopt a plan of public improvement. However, Aurora's own ordinances and the allegations of violations thereof negate the immunity from suit. So what you're suggesting maybe is that a municipality should pass ordinances that say that there should be unobstructed fields of view. And if there is an unobstructed field of view, not on public property, that the plaintiff or the individual interested has a cause of action against the property owner. But because the municipality hasn't alleged that it has any enforcement responsibilities, it can't be held liable. In this case, Your Honor, just like the Bank of DeKalb case, the language of the ordinances are virtually identical. It doesn't just give them the right to enter the property. It imposes a duty upon the municipality. And Aurora, they were the property owner. Exactly. My point is there's a big difference between being a property owner and not being a property owner. The duty that you allude to relates to authority given to itself to force property owners to clear their property of obstructions. And if they remove that responsibility, I don't know how they would have a duty to do anything. Unless, of course, the obstruction was on their property. The duty emanates, Your Honor, from their own ordinance. Again, Section 814A, Paragraph A, defines a street obstruction and says that the street shall be free of all obstructions. F at the bottom, and this is an exhibit to our motion to reconsider, removal of obstructions. Just like the DeKalb case, if such article or thing shall not be removed within the time specified in notice to the owner, or if the owner cannot be readily found for the purpose of such notice, the director of public works or police officer shall cause the same to be removed. Just like the Bank of DeKalb case. This is the case that they speak of in the dicta in the Bank of DeKalb versus the City of Aurora. In the event that it grew on private property, they would still have a duty because of the language in the ordinance. And they cite that virtually identical language in that case, that they shall go onto the property and remove it. Not merely they have the right to give notice and then they may enter the property if there's no response from the owner. They shall remove it. It does require notice. I'm sorry? I believe it requires notice to a private property. If an obstruction cannot be found for the purpose of giving such notice, then they go on the property and they remove it. They have the tools at their disposal to keep the streets free and clear of all obstructions, including visual. How they do that is up to the legislative body of the village. Well, it appears when, I'll finish the question here. It appears that when they describe an obstruction in the vision clearance triangle regulation, they talk about different percentages of opacity, different heights, that, and the one that may apply here, an overhanging object such as a branch, pole, or sign, a projecting sign with a clearance of less than 8 feet. That doesn't seem to fit into your fact pattern, does it? It does. We allege that the growth of evergreens was so thick that traffic could not be seen. I don't recall if we specified the percentage of opacity. Is there anything hanging? Well, you do at one point. You say 30%, but that doesn't seem to be the problem because you're saying it's overhanging. We also allege that it violates the ordinance in that the vision of oncoming traffic was completely blocked, implying that the opacity is actually closer to 100%. By an overhang or the- By not being able to see through it, whether it's an overhang or whether- If you look on 622 under D3, all trees, hedges, blah, blah, blah, which prevent persons driving vehicles on public streets, alleys, or highways from obtaining a clear view of traffic when approaching an intersection or a sidewalk. That's what we allege in our complaint, that this growth of bushes obstructed the view of traffic on the highways. It is defined in the ordinance as a public nuisance. It is defined in the ordinance as an obstruction, even though it's visual. Just like there's a log in the middle of the road, just like there's a pothole in the middle of the road, we have a visual obstruction that affects the safety of people driving on that road and may have imposed upon themselves, in addition to the common law duty, their own directive by virtue of their ordinance to keep their streets free and clear of all obstructions. Shall, not may. Any other questions? No. Thank you. Do we have an opportunity for Ms. Zehmeyer? Zehmeyer. How do you say it? Zehmeyer. Zehmeyer. The silent N? No, not Zehmeyer. Oh, Zehmeyer. Okay. Oh, the silent Z? No, she's so close. Nothing silent. Oh, that's a tongue twister. Okay, thank you. Thank you very much. Thank you. Is it Mr. Ricciobatto? Good morning, Your Honor. Good morning. May it please the Court. Anthony Ricciobatto on behalf of the village of Bensonville. And the lower court dismissed this case based upon sections 2-103 and 2-105 of the Illinois Tort Immunity Act. The Tort Immunity Act was passed by the Illinois General Assembly into law in 1965. And the stated purposes of the act were to protect the public entities and public employees from tort liability resulting from operation of government. And to ensure the public funds were not dissipated by private damage awards. Those are the stated purposes. And actually, this Court in its most recently published decision in the Callahan v. Clarendon Hills decision in April of 2010 reiterated that that's the purpose behind the act. In this particular case, the plaintiff, just our plaintiff's counsel, Mr. Orr, just simply argued tort liability based upon operation of government. And that operation of government is to inspect. In this particular case, they allege in paragraphs, I think, 3 through 7 of the complaint that this vision clearance triangle existed over private property. The private property of the Rodriguez's, the co-defendants. And within that vision clearance triangle, there was a tree that they owned that's theirs on their property. And that this tree violated the vision clearance triangle ordinance. And finally, the last paragraph, I think paragraph 6 in their complaint, alleges that the city had a duty and failed to act under the ordinance to enforce the ordinance to have the obstruction removed. These allegations bring this case directly within the realm of sections 2-103 and 2-105. Plaintiff is arguing that the city needed to act upon this ordinance under the section he just cited under 8.14. And it's actually alleged in the complaint that we needed to act upon this law to enforce this law to cause a private property owner to remove the obstruction that falls squarely within these two sections in the Tort Immunity Act. In Illinois and DuPage and the United States, we still have private property laws which prohibit the government from just walking onto your property and changing or modifying your house or cutting down trees or removing fences. And there's a legal procedure that any municipality would have to follow in order to remove the obstruction. And that's set forth in 8.8-1-4, which is what Mr. Orr just cited to the court. It falls squarely, squarely within these two sections. Well, if in fact the allegation of 24 accidents in five years is accurate at this particular intersection, even though we don't know the nature of each of the accidents, doesn't Bensonville have some knowledge at this point that maybe there's a problem at this location? Well, number one, I raise in my brief that that allegation, although under 2-615 we take all well-pled allegations as being true, I argue that that allegation is not well-pled. And I cite, I think, an Elmhurst case where they talked about similar allegations against a telephone company where there were numerous accidents involving people slamming into telephone poles that were immediately adjacent to North Avenue. And they alleged that. The case was, I think, was granted, summary judgment was granted for Elmhurst. And then they argued that a number of these cars had hit these telephone poles, but the appellate court decided that it was not a well-pled allegation because it didn't explain how or why all these cars were slamming into these telephone poles. And I raise that in my brief for the same reason here, is that we don't know, as Your Honor mentioned, we don't know why these 24 car accidents happen over a four-year period. It's not specifically alleged in the complaint. So I would argue that it's not a well-pled allegation. But did the trial court grant you summary judgment, grant you judgment on a 619, grant you judgment on a 615? What did the trial court do? In this case, 619 motion, Your Honor. And why are you mentioning 615 and pleading it's not well-pled? Because you didn't. Well, it was asked of me. The allegation was asked of me. So I'm just simply responding to that, Your Honor. I guess my question is, why was it in the brief? I can accept the argument that you answered a question. My question is, if it's a 619, why would it be in your brief that you were talking about not well-pled? Well, because I believe I put it in my brief because it was talked about in the appellant's brief and as the 24 car accidents was raised in the appellant's brief as being accepted as true. And in response to the appellant in the appellant's brief, I just said, well, sure, that's what's pled. But just because it's pled doesn't mean that it's well-pled and that we have to accept that as being true for purposes of 2-619. You're saying it's 24 accidents, but he didn't tie it up, the plaintiff didn't tie it up as to why the accidents occurred, that they were related to this tree. Correct. And over a five-year period that this tree didn't change. Well, yeah, that there's no way of telling what these 24 accidents were about. And I think I don't want to get the court sidetracked. The problem is that you are attacking whether or not a duty exists or a breach of duty has been alleged. And your 619 motion essentially says that we admit that there's a cause of action, but we're going to interpose as an affirmative matter the Tort Immunity Act, which says that you don't collect anyway. So. Correct. That's the correct analysis. Correct. But when you're responding to your opponent, you know, as a cautionary measure, you'd have to present your argument and then alternatively perhaps address your opponent's argument. And that's what I did. And I don't really mean to be spending too much time, I think, on an issue that isn't really dispositive of the issues before the court. What about the dicta in the Aurora case? Well, the Aurora case, as you can tell from my brief, has actually, I mean, on the surface, the facts of the Aurora case sound very similar to the facts of this case. But when you delve into the case, the Aurora case has no bearing at all on this decision. It has so because, number one, as we were just talking about the differences between a 2-615 and a 2-619 motion, the Aurora case went up on duty. And it was whether or not the Supreme Court isolated the issue as whether or not the plaintiff was, a plaintiff's complaint asserted a cause of action. And that is the only issue that was addressed, that should have been addressed by the courts. And so the only issue was duty. They didn't analyze any Tort Immunity Act section. It wasn't up on 2-619. The dicta doesn't even address what sections they were even discussing. And as a matter of fact, it was a 1971 accident, so the Tort Immunity Act had only been around for six years by the time the accident occurred. And the court actually relied upon a 1950 case that was decided before the Tort Immunity Act was ever even passed by our General Assembly or passed into law by our General Assembly. So the dicta doesn't talk about any particular section. And if you read it, it might be hinting that they were discussing whether it was a discretionary act or not. But you really can't tell from reading the dicta what part of the Tort Immunity Act they were considering. Not only that, it's the fact that in their Third Amendment complaint or their Second Amendment complaint, they allege that the obstruction existed on the public right-of-way. And that's the crucial, crucial difference between our case. Does the Tort Immunity Act even have any application if the municipal corporation is the property owner? Does the Tort Immunity Act give a municipal corporation the immunity to have stairs that are crumbling and dangerous? Does it give them the right to have holes and ruts in their parking lot and driveway for people to fall into? No, Your Honor. Section 3-102, Article 3 of the Tort Immunity Act would address property that is owned by the municipality. And that's, I think, the preamble. 3-101 of Article 3 deals with how the plaintiff is attempting to say that this condition exists on the village's property. 3-101 describes public property as real or personal property owned or leased by a local public entity. But it does not include easements or encroachments. So what he, what they're arguing is, is that some condition admittedly on some private landowner's property creates an obstruction of persons lawfully using the roads within the village. So if the tree were located on, if the tree was located on property owned by the village within the clearance vision triangle, then certainly they would have stated a cause of action. And then, because it was on our property, Article 3 would have kicked in and we would have owed them essentially a duty of ordinary care under Section 3-102. Does that answer your question, Your Honor? Would you owe them a duty of ordinary care based upon what a property owner would have done, or based upon the second half that you were wearing simultaneously with the other one, that you were supposed to enforce the ordinance that you passed upon yourself, similar to slapping yourself in a face for apparently telling a bad joke? In other words, you're liable because you told a bad joke, and then you're liable because you didn't slap yourself in the face for telling a bad joke. Well, I think it's, I guess it would be redundant and become irrelevant. If it's our, if it's our condition and it's in, if it's on our property and it's violative of an ordinance, then there would be no article in Article, no section in Article 2 that would afford us any type of immunity. Because Article 2 really, Article 2 really controls function of government. And we're talking about, if, if we can... Is there a common law duty to prevent obstructions such that it may impede traffic? I believe, I know there was a case out of this district involving an obstruction along, I think it was Township Roadways, with a garbage truck or something like that going out onto the highway. But I don't remember if it was a common law duty. Point being that, is the duty to remove this obstruction a common law duty, or is it a duty that you've created, I should say the municipal corporation has created, by the enactment of the ordinance? Well, I would argue that... That it imposes a duty on all property owners of which it happens to be the property owner. Well, the ordinance imposes the duty upon the property owner. And to address your first question, I think the answer is that under, I think under the Anthony and Ware decisions, it would fall under the public duty rule, where a municipality does not owe any particular individual a duty of care unless like four or five certain preconditions are met. So, I'm not familiar with the case that you just discussed about if there was an obstruction alongside County Line Road, but I'm familiar with the public duty rule, which says that a municipality is under no, owes the general public no specific duty of care, unless they're aware of like the specific peril that the person is in at the time, and whether the person is within control of the municipality at the time of the event. I think it's like the DeSmit case, or the Doe case that talks about it. Well, maybe another way to ask Justice McClaren's question, and if I'm redundant, I apologize. Why would the village enact such a law to put itself in potential jeopardy? The vision, the ordinance, the Vision Clearance Triangle, which seems to be a significant issue here. Well, it would only be put itself into tort liability jeopardy if it allowed its own trees and shrubs to exist within the Vision Clearance Triangle. Now, it would be acting as a responsible municipality would by passing that ordinance to require homeowners to comply with that, so that homeowners wouldn't plant trees or install fences that would be within the triangle. Now, in this particular case, it existed on private property, and the village did not act to enforce the law, but it still has an immunity under 2-103. This obstruction is not on the roadway. It's not part of the village's property, and for a good discussion on that, you see in Pine v. Whitmer, P-Y-N-E v. Whitmer, that case discusses nuisance obstructions, and it discusses obstructions, or may I finish this last proposition? That discusses obstructions, and it says the obstructions must actually exist. It must actually exist on the roadway itself, and it's in line with the Kirschbaum v. Homer Glen decision, which was just decided a couple years ago in the 3rd District, and in the Kirschbaum decision, they discuss the Havens case, the Bainter case, which are also 3rd District decisions, and the Long case, although they're all just one court. I shouldn't really. And there's a discussion in those cases about what constitutes an obstruction on the roadway, and the Illinois case law is that an obstruction on the roadway is something that physically interferes with vehicles on the roadway, like in Long. In the Long case, in the Long case, it was determined to be a ministerial act to trim a tree that actually reached out into the lanes of traffic, and in the Long case, that was considered an obstruction and a ministerial act to remove the obstruction by the municipality. Here, if the municipality were to allegedly take a ministerial act without following the law as prescribed in the ordinance, the municipality could face liability under the wrongful tree cutting act for walking down to private property and cutting down a tree. It would face potential tort liability for trespass for coming in and destroying private property. I think you've answered the question. I have one other question. So, if the village is aware of this, and there's an obstruction, you can't see oncoming traffic from approaching this intersection, is it your position that under these particular sections, then, the village can just go, kind of, oh, well, not our problem? I mean, what obligation does the village have? Notify the property owner, issue a citation for a violation of the ordinance, to prosecute that effectively and for some recourse? The obligation that the village would have would be to enforce the law. But, in a tort context, 2-103 immunizes the village for not enforcing the law. And so, I mean, every, but it ties in with the whole stated purpose of the Tort Immunity Act, and that is the legislature doesn't want all potential tort liability actions to fall into the laps of municipal governments. Imagine how many times a municipality could be sued for stairs in a private residence that didn't comply with the local building code and someone fell down them, or handrails that weren't three feet off of the stairs on a private residence, and the private homeowner doesn't have any, maybe, doesn't have deep pockets or anything to cover a judgment, so the plaintiff has to go beyond who actually owns the property and go to the municipality for not enforcing the code. Would it be safe to say that the Tort Immunity Act immunizes your client from negligent failure to enforce the law, as opposed to willful and wanton failure to enforce the law? No, I don't think there's any distinction under these sections. There's absolutely no distinctions. And, actually, I think the where and Anthony cases discuss the fact that it's not a willful and wanton standard. Anthony and where, those are the two famous cases of a three-story porch collapse in Lincoln Park where there were dozens of persons that were killed and injured. And then the Anthony case is the E2 nightclub case. The number of people that died doesn't make the act willful and wanton. It's the flagrant disregard for the enforcement of the law. For instance, let's say there were 25 accidents, and they were all caused by this obstruction, and people were demonstrating in the streets and appearing in front of the city during their meetings or their COW meetings and saying, what are you going to do about enforcing your ordinance relative to this obstructive view? Because people are dying in the streets because you aren't enforcing the law. And I'm suggesting to you that those allegations might constitute willful and wanton, and, therefore, the Tort Immunity Act doesn't apply. The pleadings don't suggest that what has been done here was even pled to be willful and wanton, but I think Justice Jorgensen's questions related or are addressing the issue that there may be a situation where a city may be willful and wanton in failing to enforce its laws. It's not just this blanket immunity that if you're not enforcing your laws that you're covered. You're covered if the failure to enforce it is mere negligence as opposed to willful. It could be intentional. You could be discriminating based upon ethnicity, religion, or creed, in which case it wouldn't just be willful and wanton. It would be a 1983 civil rights suit for failing to enforce the law. Yes, Your Honor. Okay. But with respect to these sections, they make no distinction as to the conduct, whether it just be negligent or whether it be willful and wanton or whether it be intentional conduct. And I think that if I can further answer your question, if people in the community are so outraged about it, then what they have to do is what they have to do on November 2nd, and that they need to go in and they need to exercise their political right to vote someone into office to get them to exercise and enforce the law. So it's your position that willful and wanton has nothing to do with this particular area of the law? No. It has nothing to do with these two sections that are at issue. And there's a willful. The Ware and the Anthony cases actually discussed whether willful and wanton conduct would play into the negligent or the alleged negligent enforcement of the inspection of the porch. The allegations were that the city of Chicago was willful and wanton in its inspection of the porch before it collapsed. Are you aware of the case, the Supreme Court, I believe, indicated that police or sheriff's deputies could be liable if a jury determined that their failure to protect someone who had an order of protection entered against the murderer of that individual, the estate had a cause of action in willful and wanton misconduct or failure to enforce the law? Yes, Your Honor, I'm very much aware of that case, and it's very much different because it was based upon the Domestic Violence Act. And the purpose and intent of the Domestic Violence Act was clearly set forth in it, and it set forth seven elements within the act itself. And it dealt with the topic I had talked about just a few minutes ago, and that would be the public duty rule because the municipality attempted to dismiss it. Now, I haven't read the case within the last month or so, but the municipality attempted to dismiss it based upon the public duty rule. But in the end, a cause of action was found because the cause of action was pled, the statute was pled as part of the cause of action. And the intent behind the statute was that it created a private cause of action. I haven't read the decision in a month, but I'm very familiar with it, and it's very much different because the statute specifically imposed a duty on the municipality. Any other questions? Thank you. Thank you, Your Honors. Mr. Neumann. May it please the court, counsel? In rebuttal, I want to point a very big difference between the porch cases that counsel cited and our case. The crucial difference is that the accident in our case happened on private property. This was a property for which the municipality has a common law duty to maintain in reasonably safe condition. There is a reason why most of the cases are denied on the issue of duty. The question is whether or not the duty, the common law duty to maintain your property in a reasonably safe condition, which is not subject to third immunity, there is an exception for their own property, whether or not it extends to private property even when it constitutes obstruction for the people on the road. What the ordinance does is extends that common law duty, makes a statutory duty saying, okay, even though the obstruction is on private property, it affects the safety of the people on the road. And, you know, counsel argued that this is, you know, it's a dicta. We agree that it's a dicta. It's a powerful dicta. And this reasoning has been actually adopted by other cases. Both the cases that counsel cited and argued about, there are a couple of cases that are even talking about it. There is a duty for municipality to go clean burshes or to remove obstructions. There is a case which involves parked cars that were obstructing duty. And both cases are distinguishing the situation of the Dekalb case saying unless there is a directive. So it is our position that the common law duty to maintain your property in a reasonably safe condition normally does not extend to private property unless there is a directive by the legislature to do so. At that point, it is our position, your honors, that it becomes ministerial duty. There is precedent for that saying that in Long versus the Friesland, the court is saying there is ministerial duty. There is ministerial duty to maintain the safety of the road. In this case, this ministerial duty by legislative directive is extended to obstruction by in private property. Now, this obstruction that is on private property affects the safety of motorists. There is a precedent on that, and this is, there is a case called O'Neill versus Krep. It's 226-13622, in which case involves similar restricted area, which is called, in this case, vision clearance of corner lots. This case was brought not against the municipality but against private party. But it's very, this case is important because in that case, the court says that the vision clearance for corner lot is to protect people traveling on the street and escape the village of Mendota. So it just pleaded the seat in for injury resulting from accident at intersection caused by obstructed vision. What we're saying, Your Honor, is that this private property that the village has, they have a duty to maintain safe. And because there is this obstruction outside of the property line, it still affects the safety of their road. And the legislature has instructed them to remove obstruction. There is no discretion. It's ministerial duty. The section which counsel cited for failure to enforce the ordinance, it's against private party that affects the value or what happens to private property. In our case, we're talking about the property of the municipality itself. And with regard to willful and wanton, I agree that if these cases do involve the same reason for the accidents, then it is, in addition to negligence, there is a willful and wanton conduct that perhaps we can bring. You didn't plead willful and wanton in this case, correct? No, we did not allege because we don't believe we need it. There is a common law duty to maintain your own property. The question is how far this duty extends. And we're saying because of the directive by the legislature, this common law duty to maintain your property extends to private property, and there is no immunity for it. Well, it seems to me with your argument, did you raise a material issue of fact below as to whether or not this allegedly easily proven fact that it was or was not on municipal property was raised in the trial court? I'm not sure which fact you're referring to. The accident was on municipal property. What I'm getting at, it seems like you're arguing that, as a matter of fact, this obstruction was on municipal property. No. Yes. The visual obstruction, the physical obstruction, Your Honor, was on private property. However, the visual obstruction was on the public property, and that's the whole issue. And the ordinance specifically says to remove obstructions. And with regard to Justice Hutchinson's question where if I can just say that the regulation does not just say overhanging. There is a section 101410B1. It says also any fence, hatch, wall, landscaping or screening, ground sign, or other stalling obstruction having an opacity of over 30% and a height of over 2 1⁄2 feet. So there's another part of the ordinance that specifically talks about trees that are of a certain height and certain opacity. And in our case, we are alleging that it meets the requirement. What we're supposed to decide is whether or not the visual obstruction, which actually exists over the property, is legally on the property. Exactly, Your Honor. And it's your contention that it's on the property, and it's the village contention that it isn't. But does that make any difference for purposes of the Tort Immunity Act? It does, Your Honor, because if it is legally, even though physically it is on private property, if it legally can be considered on public property and there is precedent for that, then it does because then they have a duty to maintain their own property, and they have common law duty to maintain. How they maintain it, the legislature told them, well, you have to go and remove any properties. It doesn't distinguish between visual or physical. And as a matter of fact, it talks about obstructions and encroachments. So there is a distinction. Is it correct to say that you're not basing your argument on the dicta in the Aurora case but on the holding in the Aurora case that the municipality is actually a property owner, as was the city of Aurora? I'm basing it on both, Your Honor. The municipality has ownership of its own road. But what the Calc case, the city of Aurora case, basically saying that normally they wouldn't have a duty to go on the private property to remove obstacles. However, the legislature has made an extension of this essentially what's common law duty beyond the boundaries of the property if it affects the safety of the road, which it does. Well, if you're making the argument that the dicta applies, then you're also applying it not to the argument that you just made about the obstruction being on the property, but you're basing it on the dicta, which is that they have a duty to enforce the ordinance. They have a duty to follow the law. And this is the ordinance that they're not enforcing it against anybody. This is their ordinance, which says they're saying the streets, sidewalks, and alleys of the village shall be kept free and clear of all obstructions. That's ministerial duty. There's precedent saying that in the long case that it's ministerial duty to keep your roads in a reasonably safe condition. So we're saying if there are obstructions, whether they're visual, and if we, again, by extension, Your Honor, if that tree was growing all over and the whole thing is on the private property, but it's really- Well, if the tree fell over in a storm and somebody ran into it, then there'd be a question of fact as to whether or not they had noticed and should have had reasonable time to remove it. That is correct, Your Honor. Completely correct. But what if it didn't fall and just is blocking the vision, but it never leaves the property of the owner, but there would still be a visual obstruction? The legislature has already determined that it affects the safety for motorists. So that's why there is directive to remove it, and it makes no difference where it is. Okay. So if a tree falls in Bensonville and no one's there, does it make a noise? If a tree falls down and nobody's there, then there is an issue of notice, which they have, Your Honor. They do have a notice that it's a dangerous condition. Very good. Thank you. Any other questions? I just want to follow up a question. And the basis for your conclusion that there's notice is? There are 24 accidents. We- But, again, you did not plead how those were- why those were related to the tree, correct? We did not, Your Honor. But during oral arguments, I believe counsel admitted at least one or two were. One or two. So we're talking about one or two accidents over five years, not 24, correct? We have not had an opportunity to fact-find, Your Honor. Nonetheless, that's what's in the record, correct? Correct, Your Honor. Okay. Fair enough. Thank you. The case will be taken under advisement for future recess.